ALEXANDER RALPH ET AL. v. CHARLES H. WISNER, CIR-
CUIT JUDGE OF SHIAWASSEE COUNTY.

*Corporations—Appointment of receiver—Sufficiency of showing.*

There is no doubt of the power of a court of chancery to appoint
    a receiver for a street-railway company at the suit of its bond-
    holders, where it appears that the corporation is without a
    president, vice-president, or treasurer; that the trustees named
    in the mortgage given to secure the bonds have refused to
    enforce the mortgage, and have signified their intention to
    resign their trust; that the interest on the bonds remains
    unpaid; that there are tax and judgment levies and liens upon
    the corporate property; and that the municipality which
    granted its franchises has taken proceedings to repeal the same.

*Mandamus.* Argued March 6, 1894. Granted May 4,
1894.

Relators applied for *mandamus* to compel respondent to
restore an order appointing a receiver for the Owosso &
Corunna Street-Railway Company. The facts are stated in
the opinion.

*Frank T. Lodge,* for relators.

*John T. McCurdy* and *G. R. Lyon,* for respondent.

McGRATH, C. J. On October 15, 1891, the Owosso &
Corunna Street-Railway Company issued its bonds in the
sum of $40,000, payable in 20 years, with interest at 6 per
cent., payable semi-annually. To secure the payment of
the bonds it executed a mortgage upon its property, fran-
chises, and effects to Matthias L. Stewart and Charles D.
Stewart, trustees, which provided that, if the company
should be in default in the payment of interest, and
should remain in default for six months, the trustees

should take possession, and, at the request of the majority in interest of the bondholders, sell the road at auction, upon 60 days' notice, and authorized the trustees to convey upon such sale. It also provided that a less number of bondholders might at any time protect their interests in the courts, and, in the event of the resignation of the trustees, that the company should appoint others in their stead, with the consent of the bondholders.

On July 10, 1893, Alexander Ralph and others presented to the circuit court for the county of Shiawassee, in chancery, a petition setting forth the execution of the mortgage aforesaid; that the petitioners were the owners of bonds issued as aforesaid of the par value of $16,000; that said company had not observed the covenants in said mortgage expressed; that a portion of the earnings of said company had been diverted, and had not been properly applied to the legitimate running and equipment expenses of said road; that said road was not being kept in good order; that said company was allowing debts to accumulate against it; that it claimed to have borrowed $1,600 from defendant Williams, and to have given a note therefor; that, in default of payment of such note, Williams had brought suit against it, and recovered judgment for $1,800; that in June, 1893, execution was issued upon such judgment, which was levied upon the property of the company, and said Williams threatened a sale under said levy; that in December, 1892, the city of Owosso levied a tax upon the property of said company of $74.12; that, failing to pay said tax, the said city had seized upon two of the cars of said company, and had advertised the same for sale; that the township of Caledonia had levied a tax of $48.84 upon the property of said company, but the same had not been paid; that said city of Owosso had assessed the property of said company in the sum of $38 for taxes of 1893, which was unpaid; that, claiming to be unable to pay the

interest maturing October 15, 1892, said company had borrowed the sum of $1,000, given its note therefor, and the owner thereof threatened suit; that said company had failed to pay the interest on said bonds which became due April 15, 1893, and was still in arrears therefor; that, because of the failure of said company to manage and operate its road properly, the common council of the city of Owosso had introduced and passed to its first and second reading an ordinance providing for the repeal of the franchises of said company; that the bondholders had requested the trustees to proceed under said trust mortgage, but that said trustees refused so to do; that on or about the 7th of June, 1893, the said trustees had filed in the office of the register of deeds for the county a paper purporting to be their resignation; that said company had no officers or board of directors; that defendant Hough held bonds issued as aforesaid of the par value of $1,000, defendant Gourlay of $1,000, defendant Williams of $4,000, and defendant Snow of $10,000. The company, Matthias L. Stewart, Charles D. Stewart, Nathan G. Williams, Joseph C. Hough, James Gourlay, and Frank E. Snow were made parties defendant. The petition prays that the Stewarts may be directed to proceed in the performance of the trust, or that they may be removed, or their places declared vacant, and competent trustees be appointed in their stead; that a receiver be appointed; that such receiver be authorized to borrow such sums, and issue receiver's certificates therefor, as may be necessary to pay judgments, liens, and taxes, to pay past-due obligations, put road-bed, track, and rolling-stock in suitable condition, and to keep the railway in operation, in order to preserve the security of the bondholders; and for such other relief as to the court may seem meet.

A subpoena was issued and served upon Gourlay, Snow, Hough, Williams, and the Stewarts, and also upon Edwin

A. Gould, who had been vice-president of said company, and Asa D. Whipple, who had been secretary and treasurer of said company, but each of whom, as appears by affidavits afterwards filed, had in February, 1893, tendered his resignation, and turned over and surrendered to said company the stock held by him.

Upon the same day upon which the petition was filed a motion was entered for the appointment of a receiver. On July 18, John E. Nolan, representing that he was the owner of 260 shares of the stock of said company, and bonds of the par value of $7,000, asked to be admitted as a party defendant. An order was accordingly made, and the hearing on the motion for the appointment of a receiver was postponed until August 7, 1893. Nolan appeared by his solicitor, and on August 7 filed an answer. Nolan's answer sets up that he became the owner of the stock and bonds held by him May 25, 1893, and that he is the owner of the majority of the stock in said company; but the answer does not deny any of the allegations respecting the execution of the bonds and mortgage aforesaid, the failure to pay the accrued interest thereon, the existence of the floating debts, judgments, levies, and liens, or the fact that the company is without officers, without a board of directors, or that the said trustees have filed their resignations and refused to perform said trust, or that the common council of the city of Owosso was about to repeal the ordinances granting the franchise. The hearing on the motion for the appointment of a receiver was adjourned from time to time until October 14, 1893, when a receiver was appointed, authorized to effect a loan for the purposes stated in said petition, and he did actually procure certain motors for use of said road.

After the hearing of the motion for the appointment of a receiver, the court, on September 13, filed a written

opinion respecting the situation, which contained the following:

"The undisputed facts stated in the bill and admitted by counsel for the respective parties who appear tend to show an extremely chaotic condition of the affairs of the corporation; that it is without a president, vice-president, or treasurer, and the trustees have signified their intention to resign their trust, but there are no officers to accept their resignation; that the interest on the bonds remains unpaid, and there is a floating debt of some two or three thousand dollars; and that the motor power is inadequate. Under these circumstances, a receiver should be appointed."

On December 13, 1893, John E. Nolan moved the court to set aside the order appointing the receiver, for the reason—

"That said court had no power or authority to assume the management of the business of said company, nor to vest such power and authority in its receiver; and that said court had no power to appoint such receiver, with the power given him by such order, on an interlocutory application *ex parte;* and said order was improvidently made, and the court had no jurisdiction to make the same."

Said motion was founded on the pleadings, files, and records, and was noticed for December 21, 1893. This motion, for some reason, went down, and thereupon the receiver negotiated a loan, and issued receiver's certificates for the amount thereof. On January 4, 1894, after the term of office of the circuit judge who made the appointment had expired, and before his successor in office, Nolan renewed his motion, and the same was granted. This is an application for a *mandamus* directing the circuit judge to restore the order vacated.

The parties in court when the receiver was appointed represented all the bonds except $1,000, and the holder of that $1,000 was made a party defendant December 7, 1893, and, so far as appears, was content with the order

which was set aside. Nolan was a party defendant. He held a majority of the stock in the company, and was present and took part in the argument of the motion for the appointment of the receiver, and resisted said appointment. No complaint is made that he had not actual notice of all proceedings subsequent to his appearance in the cause. His motion to set aside the appointment is not supported by a single affidavit, or any showing that the stockholders had met and taken any action looking to the election of a board of directors or any officers of the company. The material allegations of the petition respecting the chaotic condition of the affairs of this company, the existence of tax levies and judgment levies and liens upon the property of the company, the danger of the repeal of the franchises of the company, and the inactivity of the trustees,—facts which were conceded upon the hearing of the motion for the appointment,—remained undisputed. Under such conditions, we think that there is no doubt of the power of a court of chancery to appoint a receiver, and protect the bondholders in their security. Nolan has had his day in court. It was in his power, as holder of a majority of the stock, to rehabilitate this company, and thus reassure the creditors. His failure so to do gives color to the charge made in the petition that the attempt is being made to wreck the company, and deprive the bondholders of their security by permitting a forfeiture of the franchise. We think that the court erred in vacating the appointment of the receiver, and the writ is therefore granted.

The other Justices concurred.