**LITTLE EARTH OF UNITED TRIBES, INC., a Minnesota Nonprofit Corporation, and Little Earth Tenants' Committee, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Samuel R. Pierce, Jr., in his capacity as Secretary, United States Department of Housing and Urban Development (HUD), John Doe and Mary Roe, Agents and Officials of HUD, and Donald Omodt, in his capacity as Sheriff of Hennepin County, Defendants.**

Civ. No. 3–82–1096.

United States District Court,
D. Minnesota,
Third Division.

Aug. 19, 1983.

**1302**

Larry Leventhal, Minneapolis, Minn., for plaintiff Little Earth of United Tribes.

Randall Smith, Minneapolis, Minn., for plaintiff Little Earth Tenants' Committee.

Francis X. Hermann, Asst. U.S. Atty., Minneapolis, Minn., Sarah E. Canzoneri, Geoffrey Patton, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

RENNER, District Judge.

Before the court are plaintiffs' motions for injunction or stay pending appeal and defendants' motion for appointment of a receiver. A hearing was held August 17 at which Larry Leventhal, Esq. appeared for plaintiff Little Earth of United Tribes, Inc. (LEOUT) and Randall Smith, Esq. appealed for Little Earth Tenants' Committee, now entitled Little Earth Residents' Council (Residents' Council). Mary Egan, Assistant United States Attorney, and Sarah E. Canzoneri, Esq., appeared for defendants United States Department of Housing (HUD), Samuel R. Pierce, Jr., Secretary of HUD, John Doe and Mary Roe (the federal defendants).

## I.

### INTRODUCTION

LEOUT and the Residents' Council filed this action on April 13, 1982 seeking various forms of relief for defendants' alleged violations of administrative provisions, the Civil Rights Laws and the due process clause of the U.S. Constitution. After the filing of the suit, the parties agreed to the entry of a temporary restraining order restraining a foreclosure sale which had been scheduled to take place May 3, 1982.

The TRO remained in effect until June 27, 1983 when the court granted summary judgment in favor of the defendants on plaintiffs' claim that the alleged administrative action violations constituted a de-

fense to foreclosure by HUD. 584 F.Supp. 1287. It therefore vacated the temporary restraining order then in effect and denied defendants' motion for appointment of a receiver. Plaintiffs' motions for partial summary judgment and for preliminary injunctions restraining the foreclosure sale, "relating to management" and restraining transfer of monies now in Little Earth's section 8 reserve account were also denied. Defendants' motions for summary judgment on the civil rights claims were reserved for later decision. The court specifically found in accordance with Rule 54(b), Fed.R.Civ.P. that there was no just reason for delay of entry of partial summary judgment on the administrative action claims.

Plaintiffs filed an appeal of portions of the June 27, 1983 order on August 4, 1983. Shortly thereafter, plaintiffs moved for a preliminary injunction enjoining the foreclosure sale "pending final resolution by the District Court of issues not determined by the Court's [June 27, 1983 order]." Alternatively, plaintiffs moved for an injunction "restraining foreclosure or staying that portion of the [order] which vacates the preliminary injunction against foreclosure previously entered," pending appeal. Defendants also renewed their motion for appointment of a receiver.

The court concludes that the foreclosure sale, now scheduled for August 22, 1983, must be enjoined. At the same time, defendants' motion for appointment of a receiver must be granted.

## II

### A. *Motion for Preliminary Injunction or Stay*

In ruling on a motion for preliminary injunction, the court must consider the following criteria set out in *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir.1981):

1. The threat of irreparable harm to the movant;

2. The state of the balance between this harm and the injury that granting

the injunction will inflict on other parties litigant;

3. The probability that movant will succeed on the merits; and

4. The public interest.

Application of these factors here requires entry of a preliminary injunction pending resolution of plaintiffs' civil rights claims.[1]

In its June 27, 1983 order, the court concluded that alleged administrative action violations were not a defense to foreclosure. Based on that conclusion, and the fact that defendants' motion for summary judgment on the civil rights claims for relief, which included $2 million damages, was reserved for future decision, plaintiffs' motion for preliminary injunction was denied as moot.

■ The August 15, 1983 ruling as to the civil rights claims now makes injunctive relief proper. The court held that defendants' motion for summary judgment as to the civil rights claim was denied insofar as the alleged violations formed the basis for requests for injunctive and declaratory relief. Summary judgment was held to be appropriate, however, as to the claim for $2,000,000 damages. Since all defendants are sued in their official capacity, such monetary damages are barred by sovereign immunity.

■ Because only non-monetary relief is now available to remedy any civil rights violations ultimately found, the threat of irreparable harm to plaintiffs from denial of the injunction is substantial. Although defendants argue strenuously that no other buyer could meet HUD's bid at the foreclosure sale, the possibility that a third party would buy the property must still be considered. The framing of appropriate injunctive relief to remedy civil rights violations without infringing on the rights of the third party would be a difficult, if not impossible, task. This conclusion is unchanged by the fact that under Minn.Stat.

§ 580.23 (1982), plaintiffs have one year in which to redeem the property. It is quite unlikely that civil rights claims in an action such as this could be resolved in one year.

Turning to the other *Dataphase* factors, the court has insufficient information before it to make a determination on plaintiffs' likelihood of success as to the civil rights claims. Nevertheless the court has found that summary judgment must be denied because plaintiffs have raised issues of fact as to those claims. Plaintiffs have clearly shown a possibility of success which may not be ignored.

Balanced against the threat of harm to plaintiffs and the possibility of success are strong factors which weigh against an injunction. As defendants point out, they will be seriously harmed by a continued inability to foreclose on a mortgage as seriously in default as Little Earth. As the court noted in its June 27, 1983 order, this inability is also detrimental to the public interest in continued efficient operation of public housing. Nevertheless, the public's interest in meaningful redress of civil rights violations, if any should ultimately be found, is equally strong, so the balance of equities tips slightly in favor of plaintiffs.

■ Plaintiffs also request that no bond be required. Although a bond is usually required under Rule 65(c), Fed.R. Civ.P., the amount of such bond is within the discretion of the trial court, *see Stockslager v. Carroll Electric Cooperative Corporation*, 528 F.2d 949, 951 (8th Cir. 1976), and the bond may be waived in a proper case. *See Wayne Chemical, Inc. v. Columbus Agency Service Corporation*, 567 F.2d 692, 701 (7th Cir.1977). Although the court does not agree with plaintiffs' contention that no harm will result to defendants as a result of the issuance of an injunction, such harm can be minimized by

---

1. Because the basis for the injunction is the effect of foreclosure on the civil rights claims, which are not currently before the Court of Appeals, the court need not decide whether the *Reserve Mining Company* test still governs as the

standard for granting of a stay pending appeal in light of *Dataphase*. See *Reserve Mining Company v. United States*, 498 F.2d 1073, 1076 (8th Cir.1974).

the appointment of a receiver. *See infra.* Therefore no bond will be required.

### B. *Appointment of a Receiver*

Defendant moves for appointment of a receiver *pendente lite.* The mortgage agreement between HUD and Little Earth includes the following provision, in paragraph 5:

> Upon default hereunder, the mortgagee shall be entitled to the appointment of a receiver by any court having jurisdiction, without notice, to take possession and protect the property described herein and operate the same and collect the rents, profits and income therefrom.

Some courts have held that this provision is sufficient to allow appointment of a receiver when there is a defaulted mortgage. *See, e.g., U.S. v. Queen's Court Apts., Inc.,* 296 F.2d 534, 540 (9th Cir.1961); *U.S. v. Mountain Village Co.,* 424 F.Supp. 822 (D.Ma.1976).

The Court of Appeals has not reached the question of whether this provision is sufficient to warrant appointment of a receiver whenever there is a default, but it has affirmed appointment of a receiver in two cases where a default had occurred accompanied by other factors. In *U.S. v. Cedar Riverside Land Co.,* 592 F.2d 470 (8th Cir.1979), the court found that the district court's appointment of a receiver was justified not only by the contract provision, but also by the facts that the debt exceeded the value of the second property, the mortgagor had not paid the real estate taxes, the mortgagor was not maintaining the property in good condition and the use of a receiver would lower management costs. *Accord U.S. v. Chester Park Apartments,* 332 F.2d 1 (8th Cir.1964), *cert. den.,* 379 U.S. 901, 85 S.Ct. 191, 13 L.Ed.2d 176 (1964).

Plaintiffs argue that these cases are inapposite, since they involved foreclosure in the context of a federal judicial action for foreclosure. Although plaintiffs are correct that this case is governed by Minneso-

ta law since defendants are proceeding under the Minnesota Nonjudicial Foreclosure Act, the conclusion does not follow that a receiver may not be appointed.

■ Under Minnesota law, a party seeking to appoint a receiver must show: (1) waste; (2) insolvency of the mortgagor and (3) inadequacy of security. *State Mut. Life Assur. v. Frantz Klodt & Son,* 306 Minn. 249, 237 N.W.2d 354 (1975). Numerous facts[2] are present here which justify appointment of a receiver under this standard or that applied by the Court of Appeals in *Cedar Riverside* and *Chester Park.* As the court noted in its June 27, 1983 order, the amount delinquent on the mortgage is approximately $1.325 million, estimated needed repairs on the project are approximately $2.8 million and the total accelerated debt is about $5.25 million. Furthermore, it is undisputed that shutoff of both gas and water services is imminent and the physical condition of the project is continually deteriorating. Such facts obviously constitute waste.

The other two factors are also satisfied. According to the reports of LEOUT's own accountants, the corporation is insolvent. See Exhibit A filed in support of Defendants' motion for a receiver. Similarly, the actual current value of the property, $1.1 Million, is far less than the outstanding indebtedness, about $5.4 Million. *See* Jachow Declaration.

■ Because these factors are easily satisfied and because the foreclosure is now enjoined pending the determination of the civil rights claims, the court finds that appointment of a receiver is a proper exercise of its equitable powers despite the fact that defendants have not filed a counterclaim or separate action for a receiver.

■ As was noted in *Garden Homes, Incorporated et. al. v. United States et. al.,* 200 F.2d 299 (1st Cir.1952), while the appointment of a receiver should only be rarely ordered:

---

**2.** Because of time constraints, the court is unable to make extensive findings of fact. Facts

mentioned in connection with this section, however, shall be considered as findings of fact.

[T]here can be no doubt that a court or equity has power to appoint a receiver when the appointment is 'ancillary to some form of final relief which is appropriate for equity to give.' *Gordon v. Washington,* 295 U.S. 30, 38, 55 S.Ct. 584, 588, 79 L.Ed.2d 1282 (1935).

Here, plaintiffs have invoked the equitable jurisdiction of the court by seeking a preliminary injunction. The appointment of a receiver is properly ordered ancillary to the issuance of the requested injunction. Once the plaintiff has invoked the court's equitable jurisdiction, the court may appoint a receiver at the request of any party who has an interest in the property and who seeks to avoid an injury to that interest. *See* 75 C.J.S. Receivers §§ 41, 42; *See also* 1 Clark on Receivers § 76b (3d ed. 1959) (appointment of a receiver may be made even though not prayed for in the original bill or petition.).

This approach was followed in *Francis Martin, Inc. v. Lomas,* 62 Mich.App. 706, 233 N.W.2d 702 (1975), where plaintiffs sued to nullify a foreclosure sale and defendant mortgagee's motion for a receiver was granted. The appellate court rejected the argument that the defendant could not petition for appointment of a receiver since it did not file a cross claim. The court held that once an action regarding the property had been commenced, either party could move to set up a receivership. 233 N.W.2d at 704.

This approach is also not inconsistent with Minnesota law. Minn.Stat. § 576.01 (1982) provides that a receiver may be appointed:

(1) Before judgment, on the application of any party to the action who shall show an apparent right to property which is the subject of such action and is in the possession of an adverse party and the property, or its rents and profits, are in danger of loss or material impairment, except in cases wherein judgment upon failree to answer may be had without application to the district court.

The inclusion of the phrase "application of any party" suggests that the drafters contemplated that a motion for receivership could be made by a defendant and that it need not be done by filing of a complaint or counterclaim. *See State ex. rel. Nelson v. Dist. Ct.,* 192 Minn. 541, 257 N.W. 277 (1934).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for a preliminary injunction restraining a foreclosure sale pending resolution of the civil rights claims is granted; and

2. Defendants' motion for appointment of a receiver *pendente lite* is also granted.

IT IS THEREFORE FURTHER ORDERED that defendants shall submit to the court within one week of the entry of this order their proposal for designated receiver together with supporting documentation.